# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:07-cv-00339-W

| | |
|---|---|
| CLEAR BLUE, INCORPORATED, a North Carolina corporation, )<br>)<br>) Plaintiff, )<br>)<br>vs. )<br>)<br>CLEAR!BLUE, INC., a Michigan limited )<br>liability company (sued as "CLEAR!BLUE, )<br>INC., a Michigan corporation"), )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff's Motion for Attorney's Fees (Doc. No. 85) and the supporting memorandum thereto (Doc. No. 86). Defendant has responded in opposition to the motion (Doc. No. 90) and also submitted an affidavit (Doc. No. 91) and declaration (Doc. No. 92) in support of its opposition. This matter is now ripe for ruling.

Also before the Court is Defendant's Motion for Judgment as a Matter of Law and, Alternatively, A New Trial (Doc. No. 88). Plaintiff responded in opposition (Doc. No. 93), and this matter is also now ripe for disposition.

For the reasons that follow, Plaintiff's Motion for Attorney's Fees (Doc. No. 85) is DENIED, and Defendant's Motion for Judgment as a Matter of Law (Doc. No. 88) is also DENIED. Because resolution of one of these motions is not determinative of the other, the Court will address each of these motions in the order in which they were filed.

## I. BACKGROUND

Plaintiff, a North Carolina advertising and marketing company, filed this action against

Defendant, a Michigan-based marketing company, alleging trademark and service mark infringement under the Lanham Act, as well as several other claims under North Carolina state law (one of which was dismissed at summary judgment). Less than a week before trial was scheduled to commence, Defendant stipulated to liability on all remaining counts as alleged in the First Amended Complaint, but reserved its right to contest the remedies sought by Plaintiff. The Court subsequently entered a Permanent Injunction (Doc. No. 89) and conducted a trial by jury to determine what, if any, monetary remedy Plaintiff was entitled to recover from Defendant. Following the trial on damages, the jury returned a verdict finding that Plaintiff was "entitled to monetary remedies by virtue of Defendant's stipulated infringement of the CLEAR BLUE service mark," and awarding Plaintiff two-million dollars ($2,000,000). (Doc. No. 74).

## II. ATTORNEY'S FEES

Plaintiff contends it is entitled to attorney's fees pursuant to Section 35(a) of the Lanham Act, which provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In determining whether a case qualifies as "exceptional" under this provision, the plaintiff must show that the defendant acted in bad faith. Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1992). In order to establish bad faith, the plaintiff must show that the defendant's acts were "malicious, fraudulent, deliberate and willful." Id. (quoting S.Rep.No. 1400, 93rd Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 7132, 7136).

Here, Plaintiff points to three instances of conduct as evidence of Defendant's bad faith; specifically: (1) Defendant's registrations were obtained by misrepresentation; (2) Defendant's Michigan Lawsuits against Plaintiff were malicious, without merit, and were misrepresented at the trial in this matter; and (3) Defendant deliberately abused its discovery obligations and mislead both

Plaintiff and the Court. Defendant disagrees with Plaintiff's characterization of these examples and submitted two affidavits, one from its CEO and one from its attorney, as evidence to rebut Plaintiff's accusations and allegations.

As to Plaintiff's first argument concerning how Defendant obtained its trademark registration, Plaintiff contends that Defendant failed to properly classify the services it offered in its application for a trademark. The evidence shows that Defendant obtained U.S. Trademark Registrations for its Clear!Blue marks after a full appellate review and decision by the Trademark Trial and Appeal Board. Defendant certified in its registration that it performed communication services, and the evidence shows that Defendant actually performed this type of service, albeit in addition to other types of services. Defendant has consistently maintained, arguably up until the point when it admitted liability, that it did not perform traditional advertising and marketing services. This characterization is convincing in light of Defendant's evidence of "spectacular experiences" and "experiential marketing," which included examples of large scale product demonstrations atypical from the normal print, radio, and television type marketing services. Although Plaintiff can now establish through Defendant's stipulations that Defendant provided similar marketing services, Plaintiff has not presented sufficient evidence to show that Defendant deliberately misrepresented itself to the Trademark Office or the Appeal Board.

Turning next to Plaintiff's argument that Defendant's filing of the Michigan lawsuits in 2003 and 2007 demonstrates Defendant's bad faith, the Court disagrees. Defendant has presented tactical reasons for the filing of both lawsuits and has submitted affidavits showing that, at the time of filing, Defendant held a good faith basis to assert the claims therein. Plaintiff has not presented sufficient evidence to overcome Defendant's affidavits. It is also notable that Plaintiff did not move for

sanctions or attorney's fees, nor did it otherwise raise the arguments it now asserts in either of the two previous lawsuits. Accordingly, the Court finds that Defendant's filing of the Michigan lawsuits does not evidence the type of bad faith contemplated for a case to be deemed "exceptional."

In its third argument in support of attorney's fees, Plaintiff asserts that Defendant's failure to disclose an insurance policy and to supplement other discovery requests were deliberate abuses of discovery obligations and the judicial process, thus evidencing bad faith. Defendant explains that its nondisclosure of the insurance police was accurate and not intentionally misleading. According to Defendant, the existence of the insurance policy need not be disclosed during discovery because the insurance company had denied coverage, thus making it irrelevant to the case at bar. The Court finds that although the better course would have been to fully disclose the existence of the insurance policy and the contentions between the insured and insurer regarding coverage, Defendant's explanation takes its failure to disclose outside the realm of malicious, fraudulent, deliberate, or willful conduct that might make this case exceptional.

Plaintiff also contends Defendant ignored Plaintiff's discovery requests or answered them in a manner deliberately calculated to be prejudicial to Plaintiff. Plaintiff points to Defendant's failure to turn over financial documents and Defendant's designation of certain documents as for "Attorneys Eyes Only" as examples of Defendant's improper conduct. Although Plaintiff argues Defendant delayed in its production, Plaintiff does not contend that the production of documents were untimely, nor did Plaintiff ever file a motion to compel. When Plaintiff brought the "Attorneys Eyes Only" designation to the Court's attention during a hearing on an unrelated matter, Defendant agreed in open court to remove such designation. Plaintiff has not shown any prejudice by this conduct.

Finally, Plaintiff contends that Defendant's last minute concession as to liability evidences bad faith on part of Defendant. The Court disagrees that this conduct rises to the level of bad faith, particularly in light of Defendant's and defense counsel's attempts to be forthcoming with the Court and opposing counsel as to its financial status. Deciding to not proceed to trial on the merits of the allegations was a strategic, tactical move by Defendant and was made after consultation with its counsel. The Court finds that such decision, even if made on the eve of trial, does not constitute bad faith per se, nor should Defendant or its counsel be punished for making such a decision. Indeed, by stipulating to liability, Defendant saved both time and expense for the Court, jury, counsel, and the parties.

In conclusion, Plaintiff's arguments and evidence attempting to show bad faith on the part of Defendant, considered alone and as a whole, are insufficient to designate this case as exceptional in the Court's view and therefore do not warrant the award of attorney's fees under these facts. Accordingly, Plaintiff's Motion for Attorney's Fees is DENIED.

### III. JUDGMENT AS A MATTER OF LAW, AND ALTERNATIVELY, FOR A NEW TRIAL OR REMITTUR

Defendant has moved for "Judgment as a Matter of Law ("JNOV") pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, for a New Trial or Remittur pursuant to Federal Rule of Civil Procedure 59(a) and/or 59(e)." (Doc. No. 88). Defendant argues three reasons supporting such relief: (1) the jury's royalty award was purely speculative and not permitted as a matter of law because there was no previous licensing arrangement between the parties or between Plaintiff and a third party; (2) the evidence in this case did not support the two million dollar verdict awarded; and (3) the jury award is flawed because it is based on a royalty calculation hypothetically negotiated

before infringement began, before Plaintiff ever considered such a negotiation, and before the four year period permitted for recovery under the doctrine of laches.

**A. Standard of Review**

Generally, the jury verdict is "'permitted to stand unless, under Rule 50(b), no substantial evidence is presented to support the award ... or, under Rule 59, the verdict is "against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice."'" Stamathis v. Flying J, Inc., 389 F.3d 429, 436 (4th Cir.) (quoting Mattison v. Dallas Carrier Corp., 947 F.2d 95, 100 (4th Cir.1991) (citations omitted)).

More specifically, the Court may grant a JNOV under Rule 50(b), "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the [non-moving] party . . . ." The Court should "assume that testimony in favor of the non-moving party is credible, 'unless totally incredible on its face,' and ignore the substantive weight of any evidence supporting the moving party." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (quoting Duke v. Uniroyal, Inc., 928 F.2d 1413, 1419 (4th Cir.1991)).

A motion for a new trial pursuant to Rule 59(a), unlike a motion for JNOV under Rule 50(b), permits the Court to weigh the evidence and consider the credibility of witnesses. Cline, 144 F.3d at 301 (citing Poynter v. Ratcliff, 874 F.2d 219, 223 (4th Cir.1989)).

> A new trial will be granted if: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.1996). The decision to grant or deny a new trial is within the sound discretion of the district court . . . . See id.

Cline, 144 F.3d at 301. If the verdict is determined to be excessive and a new trial is warranted

under Rule 59(a), then the Court may enter a remittitur in lieu of a new trial.[1] Id. at 305 (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2820 (Civ. 2d. ed. 2008) ("If the appellate court concludes that the verdict is excessive, it need not necessarily reverse and order a new trial. It may give plaintiff an alternative by ordering a new trial unless plaintiff will consent to a remittitur in a specified amount.")). The remittitur, or reduced damage award, however, cannot be entered on its own because there is no specific provision for doing so under the Federal Rules of Civil Procedure. See Cline, 144 F.3d at 305 n.2.

**B. Analysis**

Defendant first argues that because there was no licensing agreement between it and Plaintiff or between Plaintiff and another third party, then the jury should not have granted monetary relief based on a royalty. On the contrary, courts have approved the use of hypothetical royalty rates as a reasonable tool on which to base damages. See Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1343 (7th Cir. 1992) (approving district court's calculation of a reasonably royalty based on "what a hypothetical negotiation for the right to license the Thirst-Aid mark would yield"); see also Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir.1986) (noting that loss of royalty payments during the period of infringement is a proper measure of damages for the misuse of the mark, even if damages awarded based on hypothetical franchise contract); Holiday Inns v. Airport Holiday Corporation, 493 F. Supp. 1025, 1028 (N.D.Tex.1980) ("Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks.").

---

[1]To the extent Defendant's motion seeks a remittitur pursuant to a motion to amend the judgment under Rule 59(e), such relief is not appropriate under that rule. See G.M. Garrett Realty, Inc. v. Century 21 Real Estate Corp., 2001 WL 980558 *2 (4th Cir. 2001) (noting that characterization of motion for remittitur as a motion to alter or amend the judgment under Rule 59(e) seems inappropriate).

Defendant further argues that an award based on a royalty payment cannot be made with any reasonable certainty and has no basis in reality or fact because there was no evidence that Plaintiff would have actually licensed the mark. This argument fails to recognize that Plaintiff presented evidence through the testimony of its owner, Robin Konieczny, that in 2003, Plaintiff proposed the possibility of granting Defendant a license in exchange for a royalty payment in whatever arrangement Defendant might consider. Furthermore, both parties presented evidence on licensing royalty rates. Accordingly, the jury's consideration of a royalty payment under a hypothetical agreement as one of the possible bases to award a monetary remedy was appropriate.

In its second argument supporting its request for relief, Defendant contends that Plaintiff presented insufficient evidence to support the two million dollar verdict. The jury was instructed that in awarding monetary remedies, it could consider the following: (1) any injury to Plaintiff's goodwill which resulted from the infringement, including injury to the Plaintiff's general business reputation; (2) any lost profits that the Plaintiff would have earned but for the Defendant's infringement, such that any such lost profit is determined by deducting all applicable expenses from the lost gross revenue, if any revenue was lost as a result of the infringement; (3) any expense incurred by the Plaintiff in an effort to prevent customers from being deceived by the infringement; (4) the cost of any future corrective advertising reasonably required to correct any public confusion caused by the infringement; and (5) the loss of royalty revenue for the use of Plaintiff's service mark in connection with advertising agency services.

Defendant argues that Ms. Konieczny's testimony was insufficient to support an award based on a reasonably royalty and that no testimony showed that Plaintiff lost business to Defendant. This lack of evidence, according to Defendant, demonstrates that any damage award could not be

calculated with any degree of reasonable certainty. The evidence, however, is more than sufficient to support such an award. Indeed, Plaintiff presented evidence and argument suggesting that an award of approximately four million dollars might be appropriate. For example, Ms. Konieczny testified that due to the nature of Defendant's infringement, it was difficult, if not impossible, to quantify the amount of business and goodwill that Plaintiff might have lost as a result of Defendant's wrongful conduct. The evidence also showed that Defendant engaged in infringement for over eight years and, based on a breakdown of annual revenues, made approximately seventy-seven million dollars during that time. Ms. Konieczy testified that a royalty rate of six percent (6%) of this revenue would be reasonable and would yield about $4.65 million. To the extent Defendant presented somewhat conflicting testimony regarding a reasonable royalty through the testimony of Mr. Battersby, the jury, as fact finder, was entitled to weigh the evidence and determine credibility. The jury awarded much less than the amount suggested by Plaintiff, thus showing careful deliberation and consideration of all the evidence. In its oral ruling on Defendant's oral motion for a judgment under Rule 50 immediately following the jury verdict, the Court stated there is no way to know for sure how the jury reached the two million dollar verdict. Nevertheless, sufficient evidence in the record supports a $4.6 million verdict, and the jury could have decided that the number of years of Defendant's gross revenue should be reduced, or that a royalty percentage rate should be reduced, or a combination of both. However the jury reached its verdict, there is sufficient evidence to support it. Additionally, the Court does not find the verdict to be excessive in light of all the evidence presented.

In its final argument in support of a JNOV or new trial, Defendant argues that the jury award is flawed because the royalty calculation was not limited in time. Defendant contends that Plaintiff never produced evidence to show the "start date" of Defendant's infringement. Evidence presented

by both Plaintiff and Defendant showed that Defendant began using the Clear!Blue mark in June 2000, two years after Plaintiff had registered its ClearBlue mark. The Amended Complaint specifically alleges the infringement began in late 2000 (Amended Complaint, Doc. No. 15, ¶ 64), and Defendant, by stipulating to liability on all counts, admitted this fact. Thus, the evidence sufficiently demonstrated the time at which Defendant's infringement commenced. To the extent Defendant is trying to assert that its laches defense barred recovery by Plaintiff, the Court allowed the parties to make argument as to the reasonableness of Plaintiff's delay in bringing suit and also instructed the jury that in considering whether to award any monetary remedy, it could consider "[a]ny unreasonable delay by the Plaintiff in asserting its rights." The fact the damage award in this case is significantly less than that requested by Plaintiff indicates that the jury may have considered and taken into account Plaintiff's delay in filing this action. Accordingly, this argument does not support the relief requested by Defendant.

In sum, the jury was not required to find evidence of a licensing agreement between the parties or between Plaintiff and a third party in order to decide whether a royalty award was an adequate remedy; the two million dollar verdict is supported by sufficient evidence; and both parties presented evidence to show the date infringement began, as well as the explanations for Plaintiff's delay in bringing suit, such that the jury could consider this evidence, along with evidence of other factors, in arriving at its verdict. Defendant has failed to convince the Court that pursuant to Rule 50(b), no legally sufficient evidentiary basis exists for a reasonable jury to award monetary relief to Plaintiff, nor has Defendant shown that under Rule 59, the verdict is against the clear weight of the evidence, is based upon evidence which is false, or results in a miscarriage of justice. See Stamathis, 389 F.3d at 436.

## IV. Conclusion

Defendant's conduct does not support a finding of bad faith to designate this case as exceptional and justify an award of attorney's fees to Plaintiff. Additionally, substantial evidence supports the jury's verdict, and the Court finds no reason under applicable law to overturn the jury's verdict or order a new trial.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Attorney's Fees (Doc. No. 85) is DENIED, and Defendant's Motion for Judgment as a Matter of Law (Doc. No. 88) is also DENIED.

IT IS SO ORDERED.

Signed: December 11, 2008

Frank D. Whitney
United States District Judge